IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TROY LEE WILLIAMS, JR.,

    Petitioner,

v.                                                          Civil Action No. 3:12CV527

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Troy Lee Williams, Jr., a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Williams challenges his convictions in the Circuit Court of the City of Norfolk ("Circuit Court") for voluntary manslaughter, use of a firearm in the commission of a felony, attempt to distribute marijuana and possession of a firearm while possessing with intent to distribute marijuana, and possession of a firearm by a felon.[1] Williams demands relief upon the following grounds:

| | |
|---|---|
| Claim 1 | "Ineffective assistance of counsel: . . . . My counsel failed to call Shanita Scott to testify or at least [introduce her] police statement befor[e] the jury during trial. . . . [H]er statement could have provided a foundation for the jury to believe the accused to act out of self defense." (§ 2254 Pet. 6.) |
| Claim 2 | "Prosecutorial Misconduct:<br>(a) . . . . The prosecutor have two witness[es] Shanita Scott and Ernest Weatherly now the Commonwealth used Shanita Scott statement to bring forth some charges but didn't use her statement at trial. The prosecutor with holds [sic] favorable material evidence, her witness she had." (*Id.* at 8.)<br>(b) The prosecution permitted Ernest Weatherly to testify falsely. (Mem. Supp. § 2254 Pet. ¶ 34.) |

---

[1] Although Williams lists all of these charges on the face of the § 2254 Petition, his claims are primarily directed at his convictions for voluntary manslaughter and use of a firearm in the commission of a felony. The Court corrects the capitalization in the quotations to Williams's submissions.

Respondent has moved to dismiss on the grounds that, *inter alia*, Claim 1 lacks merit and that Williams procedurally defaulted Claims 2(a) and 2(b). Williams has responded. For the reasons set forth below the Motion to Dismiss (ECF No. 7) will be granted.

## I. PERTINENT PROCEDURAL HISTORY

After a jury found Williams guilty, Williams appealed. On appeal, Williams challenged the sufficiency of the evidence to support his convictions for voluntary manslaughter, use of a firearm in the commission of a felony, and possession of a firearm while possessing with intent to distribute marijuana. Petition for Appeal at 3, *Williams v. Commonwealth*, No. 0695–10–1 (Va. Ct. App. filed June 30, 2010). In denying his petition for appeal, the Court of Appeals of Virginia aptly summarized the evidence of Williams's guilt as follows:

> At approximately 10:00 p.m. on December 19, 2007, appellant was at his girlfriend's apartment when they heard a knock at the back door. Appellant went to the door while his girlfriend, Keuinia Worsley, remained in the living room. Worsley heard the sound of appellant opening the door, followed almost immediately by the sound of a single gunshot. She heard no sounds indicating an alter[c]ation or a struggle prior to the shot.
> Worsley ran upstairs to the bedroom of the couple's five-year-old daughter. Approximately one minute later, she heard appellant yell, "Babe, come on. Somebody just tried to rob me." Worsley immediately came downstairs with their daughter and fled the apartment with appellant, who dropped Worsley and the girl at her sister's house. The following day, Worsley returned to the apartment and inspected the back door; however, she saw no signs of damage.
> On the night of the shooting, police responded to the scene at approximately 11:30 p.m. Officer Charles Dreer observed a black male lying face down near the back door of Worsley's apartment, a silver revolver on the ground next to him. The male, later identified as teenager Brennan McCargo, had suffered a single gunshot wound to his chest, and was pronounced dead at the scene. He was carrying approximately $300 in cash.
> The area where McCargo's body was discovered was well-lit, and Earnest Weatherly[2] later reported to police he witnessed the shooting while he was

---

[2] Weatherly acknowledged he did not report his knowledge of the shooting until after he had been arrested on other charges. He also admitted he was selling cocaine at the time he witnessed the incident.

standing approximately two hundred feet away at a neighboring apartment. Weatherly saw two boys approach appellant's back door, and then turned away to speak with his girlfriend. When he turned back, Weatherly saw appellant point a gun at the boys and fire a single shot. Weatherly noted the boys were standing outside the apartment door at the time the shot was fired. One of the boys fell face down next to the door, and the other boy fled. Appellant went back inside his apartment; approximately one minute later, appellant stepped outside again and looked around before returning to the apartment. Weatherly saw two boys approach the slain boy's body and remove a gun before running away.

When police searched appellant's apartment, they found a single spent casing for a .45 caliber weapon approximately eight feet from the back door. They also recovered a magazine and ammunition for a .45 caliber gun, as well as a gun case and cartridges for a .38 caliber weapon. Four to five pounds of marijuana, a set of scales, and three cell phones were in the apartment.

Appellant was arrested approximately one month after the shooting. At trial, he testified in his own defense. He admitted he was a drug dealer and that he intended to sell the marijuana found in the apartment. However, he denied owning a gun or having any knowledge of the ammunition found in the apartment. He maintained that one of the boys threatened him with a gun when he opened the door and tried to enter the apartment. When appellant struggled for control of the gun, the gun fired as appellant pushed the boy out of the apartment. Appellant admitted he lied when he initially told police he was not in the apartment at the time of the shooting. He also admitted he had eight felony convictions.

Citing his testimony that he acted in self-defense, appellant maintains the evidence was insufficient to support his manslaughter and firearm convictions. . . .

Here, the jury could reasonably reject appellant's testimony in favor of Weatherly's account that appellant appeared at the back door with a gun and shot the victim outside the apartment rather than in a struggle to protect himself from an armed intruder. While appellant denied having a gun in his possession at the time he answered the door, the jury was free to conclude that a self-professed drug dealer with a large quantity of marijuana in his possession would likely also carry a gun.

Furthermore, consistent with Weatherly's account and contrary to appellant's testimony, Worsley heard no sign of a struggle when appellant opened the door and heard a gunshot almost immediately. The victim was struck squarely in the chest by the gunshot, lending further support to Weatherly's testimony that the shot was fired deliberately. A single .45 caliber casing, the same caliber as the bullet removed from the victim's body, was recovered a short distance from the back door, and additional .45 caliber ammunition and .38 caliber ammunition were found in Worsley's apartment. Finally, appellant's flight from the scene and his failure to report the shooting to authorities supplied the fact finder with additional evidence of appellant's guilt.

3

*Williams v. Commonwealth*, No. 0695-10-1, at 1–4 (Va. Ct. App. Aug. 25, 2010) (internal citations omitted) (footnote number altered). The Supreme Court of Virginia refused Williams's petition for appeal. *Williams v. Commonwealth*, No. 101813, at 1 (Va. Feb. 17, 2011.)

Thereafter, Williams filed a petition for a writ of habeas corpus with the Circuit Court. In that petition, Williams raised a version of Claims 1 and 2(a) & (b) that he raises in his § 2254 Petition. Petition for a Writ of Habeas Corpus Statement of Facts Illegal Detention (ECF No. 14–1)[3] at 14, 16–17, *Williams v. Matchena*, Nos. CL12000864, CR08001571-00,-03, & CR08001557-00, -01 (Va. Cir. Ct. filed Feb. 6, 2012).[4] As pertinent here, the Circuit Court found Claim 1 lacked merit and that Williams had defaulted Claims 2(a) and 2(b) by failing to raise such claims at trial and on direct appeal. *Williams v. Matchena*, Nos. CL12000864, CR08001571-00,-03, & CR08001557-00, -01, at 10 (Va. Cir. Ct. Apr. 5, 2012) (citing *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974)).

## II. EXHAUSTION AND PROCEDURAL DEFAULT

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct

---

[3] The Court employs the pagination assigned to the document by the Court's CM/ECF docketing system.

[4] State habeas Claim J corresponds to § 2254 Claims 2(a) and 2(b). *Williams v. Matchena*, Nos. CL12000864, CR08001571-00,-03, & CR08001557-00, -01, at 10 (Va. Cir. Ct. Apr. 5, 2012). State habeas Claims A through G correspond to § 2254 Claim 1. *Id.* at 7–8.

alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a

state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or his actual innocence, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Circuit Court found Williams procedurally defaulted Claims 2(a) & (b) pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) because Williams could have, but failed to, raise the claims at trial and on direct appeal. *Williams v. Matchena*, Nos. CL12000864, CR08001571–00,–03, & CR08001557–00, –01, at 10 (Va. Cir. Ct. Apr. 5, 2012) (citing *Slayton*, 205 S.E.2d 680). *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Williams has procedurally defaulted Claims 2(a) & (b) unless he demonstrates cause and prejudice to excuse his default or his actual innocence. Williams makes no such showing. Accordingly, Claims 2(a) & (b) will be dismissed.

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.[6] *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The second component of *Strickland*, the prejudice component, requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Failure to Call Shanita Scott

In Claim 1, Williams faults counsel for failing to call Shanita Scott to testify or to introduce a statement Ms. Scott allegedly made to the police. (§ 2254 Pet. 6.) In rejecting this claim, the Circuit Court observed:

> At trial, Williams testified in his own behalf. Throughout his direct and cross examination, Williams testified that the only people present other than the two alleged robbers (who he did not know) were Keiunia Worsley, their six-year-old child, and an infant child. (1/29/09 Tr. at 510–37). Consequently, the alleged favorable testimony regarding Williams' claim of self-defense could not have

---

[6] "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

7

been based upon firsthand knowledge. Scott could not have testified as to anything she was allegedly told by another. *See Robinson v. Commonwealth*, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999) ("hearsay is an out-of-court statement offered to prove the truth of the matter asserted and ... hearsay includes testimony by a witness who relates not what he knows personally but what others have told him or what he has read.").[7] Moreover, at the beginning of trial, during the plea colloquy between Williams and this Court regarding the voluntariness of his not guilty pleas, Williams stated that he was ready for trial that day, and that there were no witnesses to be called on his behalf. Williams stated that he had understood all the questions he had been asked by the Court and that his responses had been truthful. (1/27/09 Tr. at 11–12). Accordingly, the record before this Court disproves any act or omission on the part of his attorney.

Further, there has been no proffer of Scott's alleged testimony. Under such circumstances, the allegation fails. *See Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990); *see also Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (allegation of inadequate investigation does not warrant habeas relief absent proffer of what favorable evidence or testimony would have been produced).

*Williams v. Matchena*, Nos. CL12000864, CR08001571-00,-03, & CR08001557-00, -01, at 7-8 (Va. Cir. Ct. Apr. 5, 2012) (alteration in original) (omission in original) (footnote number altered). The Circuit Court accurately assessed the lack of merit to Claim 1.[8] Accordingly, Claim 1 will be dismissed.

---

[7] "[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and that the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." *Robinson*, 258 Va. at 6, 516 S.E.2d at 477 (1999) (citations omitted). Williams has not provided any basis for admission.

[8] The Circuit Court incorrectly stated that a six-year-old child and an infant were present in the apartment. *Williams v. Matchena*, Nos. CL12000864, CR08001571-00,-03, & CR08001557-00, -01, at 7. Rather, Williams acknowledged that, at the time of the alleged robbery, Keiunia Worsley was present with their then-five-year-old daughter and Keiunia was "five month's pregnant at the time." (Jan. 29, 2009 Tr. 521.) This error has no bearing on the Circuit Court's conclusion that Williams's legal claim lacks merit.

## B. Williams's New Claims

In his response to Respondent's Motion to Dismiss, Williams raises a series of new claims of ineffective assistance of counsel. Specifically, Williams asserts that counsel performed deficiently for failing to raise the following issues ("Proposed Amended Claims"):

a) the accused was found guilty of a charge not brought before the grand jury;
b) the indictments were amended at trial after the trial commenced violating the Fifth Amendm[ent;[9]]
c) the indictments and associated statutes are void of the elements, facts, and nature of the crimes charge[d] den[y]ing the accused of notice violating the Sixth Amendment; and
d) there [were] defects in the charging process.

(Pet'r's Mot. Deny Commonwealth's Mot. Dismiss 15.) Williams insists these defects deprived the Circuit Court of subject matter jurisdiction. (*Id.* at 15; 25–39.)

Williams has not received permission to amend his § 2254 Petition to add the Proposed Amended Claims. "[H]abeas applications 'may be amended . . . as provided in the rules of procedure applicable to civil actions.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (omission in original) (quoting 28 U.S.C. § 2242). Under Federal Rule of Civil Procedure "15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citing cases). Leave to amend is appropriately denied as futile when, as is the case here, the statute of limitations bars the new claims. *See Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011).

---

[9] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V.

### 1. Statute of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

> 1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). As explained below, § 2244(d)(1)(A) controls the commencement of the statute of limitations in this matter.

### 2. Commencement of the Limitation Period

Williams's judgment became final for the purposes of the AEDPA on Wednesday, May 18, 2011, the last day to file a petition for certiorari in the Supreme Court of the United States. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." ( citing 28 U.S.C. § 2244(d)(1)(A))); Sup.Ct. R. 13(1) (stating that petition for certiorari should be filed within ninety days of the entry of judgment by state court of last resort or of the order denying discretionary review). The statute of limitations began to run the next day, May 19, 2011.

### 3. Running of the Statute of Limitations

The statute of limitations ran for two hundred and sixty-three (263) days, from May 18, 2011 until February 6, 2012, when Williams filed his petition for a writ of habeas corpus with the Circuit Court. *See* 28 U.S.C. § 2244(d)(2). Upon the dismissal of that petition on April 5, 2012, the statute of limitations commenced running again. At that juncture, Williams had one hundred and two days (102), or until Monday, July 16, 2012, to file claims for federal habeas relief. Williams failed to file his Proposed Amended Claims with this Court until October 2, 2012. (Pet'r's Mot. Deny Commonwealth's Mot. Dismiss Certificate of Service.)[10] Thus, the statute of limitations bars Williams's Proposed Amended Claims unless Williams demonstrates entitlement to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D), equitable tolling, or that his Proposed Amended Claims relate back to the claims in his timely filed § 2254 Petition.

---

[10] The Court deems the Proposed Amended Claims filed on the date Williams alleges he placed those claims in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

Neither Williams nor the record suggests any circumstances that would warrant a belated commencement of the limitation period or equitable tolling.[11] Moreover, as discussed below, Williams fails to demonstrate that his Proposed Amended Claims relate back to the claim in his § 2254 Petition.

### 4. Relation Back

Although Williams filed his original § 2254 Petition within the limitation period, the Proposed Amended Claims fail to relate back to that submission for purposes of the statute of limitations. The Supreme Court has stated that, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664. Nevertheless, an amended claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. In this regard, it is not sufficient that the new claim simply has the same form as the original claims if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

---

[11] Williams's challenges to the jurisdiction of the Circuit Court are not exempted from the statute of limitations. *Jones v. Johnson*, No. 3:08CV683–HEH, 2009 WL 1975027, at *2 (E.D. Va. July 2, 2009) (citations omitted); *see United States v. Scruggs*, 691 F.3d 660, 666 n.13 (5th Cir. 2012) (as corrected Aug. 17, 2013) (citations omitted), *cert. denied*, 133 S. Ct. 1282 (2013).

Here, Williams failed to raise any claims alleging jurisdictional defects or defective indictments, defects in the charging process or deficiency on the part of counsel for failing to pursue such alleged defects. Thus, the Proposed Amended Claims, which raise such allegations, fail to relate back to Williams's original claims because the new claims "arise from separate occurrences of 'both time and type.'" *Pittman*, 209 F.3d at 318 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999)). Accordingly, Williams's attempt to amend his § 2254 Petition will be denied.

### IV. CONCLUSION

The Motion to Dismiss (ECF No. 7) will be GRANTED. Williams's Motion to Deny Commonwealth's Motion to Dismiss (ECF No. 13) will be DENIED. Williams's attempt to amend his § 2254 Petition to add additional claims will be DENIED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED. A certificate of appealability will be denied.[12]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 7/29/13
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[12] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Williams fails to satisfy this standard.